1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                        FOR THE DISTRICT OF OREGON

11  PEGGY J. HALLAS,                    )
                                        )
12                    Plaintiff,        )
                                        )      No.  CV-04-433-HU
13         v.                           )
                                        )
14                                      )
    AMERIQUEST MORTGAGE COMPANY,        )
15  a Delaware corporation,            )
    FIDELITY NATIONAL TITLE IN-         )
16  SURANCE COMPANY, a California )          OPINION & ORDER
    corporation, and DEUTSCHE BANK)
17  NATIONAL TRUST COMPANY, a           )
    NATIONAL ASSOCIATION, TOWN &        )
18  COUNTRY TITLE SERVICES, a           )
    California corporation,             )
19                                      )
                      Defendants.       )
20  _____)

21  Terrance J. Slominksi
    7100 S.W. Hampton, Suite 129
22  Tigard, Oregon 97223

23         Attorney for Plaintiff

24  David M. Jacobson
    DORSEY & WHITNEY LLP
25  US Bank Centre
    1420 Fifth Avenue, Suite 3400
26  Seattle, Washington 98101

27         Attorney for Defendants

28  / / /


    1 - OPINION & ORDER

HUBEL, Magistrate Judge:

Plaintiff Peggy Hallas brings this action regarding a nonjudicial foreclosure and subsequent sale of her real property. She brings the following claims against the following defendants: (1) claims under the Truth in Lending Act (TILA) against defendants Ameriquest Mortgage Company and Deutsche Bank National Association; (2) a claim under the Fair Debt Collection Practices Act (FDCPA) against Fidelity National Title Insurance Company and Town & Country Title Services; (3) a claim under Oregon's Unfair Trade Practices Act against Ameriquest; (4) a claim of slander of title against Fidelity and Deutsche Bank; (5) a claim to remove cloud on title against Deutsche Bank; (6) a claim for breach of contract against Ameriquest and Fidelity; and (7) a claim for declaratory relief against Ameriquest, Fidelity, and Deutsche Bank seeking a declaration that Ameriquest did not have a valid Deed of Trust or that the foreclosure and deed to Deutsche Bank was not done in accordance with applicable law.

In an August 24, 2005 Opinion & Order, I denied plaintiff's motion for partial summary judgment on the declaratory relief claim and I granted defendants' cross-motion for summary judgment on the same claim. I concluded that the Deed of Trust was subject to reformation based on mutual mistake or a scrivener's error. After reforming the deed, there was no basis for plaintiff's argument that the deed violated the statute of frauds. I also concluded that pursuant to Washington law, plaintiff waived her right to challenge the defective legal property description in the default notice by failing to object to it before the foreclosure sale. Thus, I concluded that there was no basis for a declaration that

2 - OPINION & ORDER

the trustee's sale was wrongful and void and that plaintiff was still the lawful owner of her property.

Defendants now move for summary judgment on the remaining claims. Plaintiff moves to amend her Complaint to add a breach of fiduciary duty claim. Additionally, plaintiff requests that I reconsider my previous determination on the reformation issue.[1] All parties have consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). I deny plaintiff's motion to amend and I grant defendants' motion. I further deny plaintiff's request for reconsideration.

## BACKGROUND

The background of the dispute is set forth in detail in the August 24, 2005 Opinion & Order. Any additional relevant facts are incorporated into the discussion below.

## STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett,

---

[1] Plaintiff's reconsideration request was not filed as a formal motion but was included in her memorandum in opposition to defendants' summary judgment motion. The parties have treated the request as a motion, as do I.

3 - OPINION & ORDER

477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'" Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. T.W. Elec. Serv., 809 F.2d at 630-31.

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Id.; In re Agricultural Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990); California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

DISCUSSION

I. Defendants' Motion for Summary Judgment

Defendants move for summary judgment on all of plaintiff's

4 - OPINION & ORDER

remaining claims on the basis that plaintiff has waived her right to bring those claims in this action by failing to assert them before the foreclosure sale. Alternatively, defendants contend that summary judgment is warranted for reasons particular to each claim, as further discussed below.

A. Waiver

The law regarding waiver is discussed in the August 24, 2005 Opinion & Order. Aug. 24, 2005 Op. & Ord. at pp. 16-17. I incorporate that discussion here. Relying on Washington statutory and case law, I concluded in the August 24, 2005 Opinion & Order that plaintiff waived any right to contest the defective property description in the notice of default because she received notice of the right to enjoin the sale, she had actual or constructive knowledge of a defense to foreclosure prior to the sale, and she failed to bring an action to obtain a court order enjoining the sale. Id.

Presently, defendants argue that the waiver recognized by Washington law includes the waiver of any defenses to default or challenges to the underlying obligations for which foreclosure is sought. That is, defendants contend that by failing to act before the foreclosure sale, plaintiff has waived her right to assert any claims arising out of the underlying obligations created by her mortgage with Ameriquest and the Complaint should be dismissed in its entirety.

In support of their argument, defendants rely on In re Marriage of Kaseburg, 126 Wash. App. 546, 108 P.3d 1278 (2005), Steward v. Good, 51 Wash. App. 509, 754 P.2d 150 (1988), and Peoples Nat'l Bank v. Ostrander, 6 Wash. App. 28, 491 P.2d 1058

5 - OPINION & ORDER

(1971).

In *Kaseburg*, a wife in a divorce proceeding alleged that her husband had committed fraud, waste, and other financial misconduct in regard to real property that they had previously owned and thus, she should be awarded her community interest in that property. *Kaseburg*, 126 Wash. App. at 549, 108 P.3d at 1280. The couple had lived in the home, but had borrowed extensively from the husband's parents for the building of the home and other living expenses. Id. Before the marriage dissolution, the couple executed an $850,000 promissory note and deed of trust on the home in favor of the husband's parents. Id. After the couple separated, but before the dissolution trial, the husband's parents initiated a foreclosure action under the Washington Deed of Trust Act on the note and deed of trust. Id. The wife received a notice of default. Id. She then received a notice of trustee's sale. I She did nothing to contest the sale. Id. The home was foreclosed upon with the sale occurring just prior to the dissolution trial. Id. at 551, 108 P.3d at 1281. The husband's parents were the successful bidders and took title to the home. Id.

Although by the time the dissolution trial took place, the home was not an asset to divide, the wife nonetheless argued that she had been the victim of fraud by the husband, that the promissory note was fraudulent and inflated, and that the husband had wasted and mishandled community assets. The trial court ruled in favor of the wife. Id. at 554-55, 108 P.3d at 1283.

The appellate court reversed. The court recognized that in a dissolution proceeding, the trial court can exercise its equitable powers and evaluate whether a party wasted or concealed community

6 - OPINION & ORDER

assets. _Id._ at 558, 108 P.3d at 1285. But, the court said, this was not an issue of waste, but was one of foreclosure of a debt secured by the deed of trust and thus, was governed by the Deed of Trust Act. _Id._ Notably, the court stated that the Act provides the sole method to contest and enjoin a foreclosure sale under Wash. Rev. Code § (RCW) 61.24.130(1). "A person waives the right to contest the underlying obligations on the property in foreclosure proceedings when there is no attempt to employ the presale remedies under RCW 61.24.130." _Id._

The court stated that the wife did not dispute that she received notice of the default, that the notice complied with the Deed of Trust Act, and she did not contest the foreclosure proceedings in any manner. Thus, she waived the opportunity to contest the underlying debt as fraudulent and the opportunity to contest the transfer of the property to the husband's parents. _Id._ at 559, 108 P.3d at 1285. Because the debt shown in the promissory note and the community interest in the home were legally extinguished in the foreclosure sale, the amount of the debt and the value of the property were not before the trial court for valuation or distribution in the dissolution proceeding. _Id._

In _Steward_, the property at issue had been sold to a third party at a nonjudicial foreclosure sale. Following the sale, the previous owners brought an action to quiet title in their favor, arguing that the trustee failed to strictly comply with the statutory prerequisites of the Deed of Trust Act. The appellate court described the issue as whether, and under what circumstances, a party may obtain post-sale relief from a trustee's sale, where the subject real property has been sold to third party strangers to

7 - OPINION & ORDER

the original transaction.  _Steward_, 51 Wash. App. at 512, 754 P.2d at 152.  The court agreed with the purchasers that once there is a purchase by an established bona fide purchaser, there may be no post-sale relief for alleged irregularities in the sale.  _Id._

The court explained that the Stewards waived any right to contest the trustee's sale by their failure to pursue the presale remedies provided in the Act.  _Id._ at 515, 754 P.2d at 154.  There was no dispute that they had actual notice of the sale.  Each of their objections to the sale was or should have been known by them before the sale and they failed to bring an action to restrain the sale.  _Id._  The court stated that "courts will not allow a grantor to delay asserting a defense to the default until after the sale because it would defeat the spirit and intent of the trust deed act."  _Id._ at 516-17, 754 P.2d at 154 (internal quotation omitted).

Finally, in _Peoples National Bank_, the purchaser of property at a nonjudicial foreclosure trustee's sale brought an unlawful detainer action against the grantors of the trust deed to obtain possession of the real property.  _Peoples Nat'l Bank_, 6 Wash. App. at 29, 491 P.2d at 1059.  The grantors filed an answer and cross-complaint alleging that the deed of trust was obtained by fraud because the plaintiff had represented that the document the defendant signed was a mortgage and not a deed of trust.  _Id._ at 30, 491 P.2d at 1059-60.

The court affirmed the trial court's striking of the defendants' fraud claim because under the Washington Deed of Trust Act, the defendant had notice of the sale and knew that the document was a trust deed and not a mortgage, yet failed to bring an action to restrain the sale and litigate the issue of fraud

8 - OPINION & ORDER

before the sale. <u>Id.</u> at 32, 491 P.2d at 1060. The court explained that allowing the defendant to delay asserting his defense of fraud until late in the proceedings would defeat the spirt and intent of the Deed of Trust Act. <u>Id.</u> Because the Deed of Trust Act gave the defendant an adequate remedy at law, he could not assert the fraud argument as an equitable defense to the unlawful detainer action.

These cases show that whether the claim is a defect in a procedural or other requirement of the Deed of Trust Act itself (such as in the default notice), or is a challenge to the underlying obligation (such as fraud claims), the waiver provision of the Deed of Trust Act applies to prevent the borrower/grantor from raising such claims when the borrower/grantor has notice of the claim before the sale, has notice of the sale, and fails to initiate litigation to stop the sale.

Moreover, the language of the Deed of Trust Act is quite broad, indicating that the waiver provision applies to both challenges to the pre-foreclosure process and challenges to the underlying obligation. <u>E.g.</u>, RCW 61.24.130(1) ("Nothing contained in this chapter shall prejudice the right of the borrower, grantor, any guarantor, or any person who has an interest in, lien, or claim of lien against the property or some part thereof, to restrain, <u>on any proper ground</u>, a trustee's sale.") (emphasis added); RCW 61.24.040(1)(f)(IX) ("Anyone having any objection to the sale <u>on any grounds whatsoever</u> will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain that sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.") (emphasis added).

9 - OPINION & ORDER

1    Defendants accurately describe plaintiffs' remaining claims as
2    being related to the execution of the trust deed or to the
3    foreclosure. The TILA claims are based on allegations that
4    Ameriquest allegedly failed to provide required disclosures
5    including the total finance charge, the amount financed, and the
6    annual percentage rate of interest. Compl. at ¶¶ 39-46. The
7    Oregon trade practices claim is based on an alleged TILA violation.
8    Plaintiff bases the Oregon claim on an administrative rule
9    providing that it is an unfair or deceptive trade practice under
10   Oregon law for a person to advertise, offer credit, or extend
11   credit related to the purchase of real estate, goods, or services
12   in violation of TILA. Id. at ¶¶ 47-48.

13   The FDCPA claim is based on alleged contacts of plaintiff by
14   Fidelity and Town & Country for the purposes of collecting. Id. at
15   ¶¶ 49-54. Plaintiff also alleges that Fidelity used a name other
16   than its own in making these contacts. Id. at ¶ 52. The breach of
17   contract claim is based on the Deed of Trust. In that claim,
18   plaintiffs alleges that the Deed of Trust was a contract and that
19   Ameriquest breached the contract by declaring plaintiff in default,
20   which plaintiff contends was excused by virtue of the alleged TILA
21   violations. Id. at ¶¶ 63-68. That is, she alleges that she was
22   not in default because of Ameriquest's alleged earlier failure to
23   provide her with all of the required disclosures under TILA. Id.
24   She also alleges that the other defendants breached the Deed of
25   Trust by not foreclosing on her property in accordance with
26   applicable Washington law. Id.

27   The TILA claims, the Oregon trade practices claim, and the
28   breach of contract claim all assert alleged violations in the

execution of the Deed of Trust, violations that could have provided a basis for restraining the foreclosure. The FDCPA claim, and to a certain extent the breach of contract claim, asserts improper conduct in the execution of the foreclosure proceedings, before the actual sale, and also could have provided a defense to the foreclosure. There is no dispute that plaintiff had actual or constructive knowledge of the bases of her claims before the foreclosure sale occurred.

As established in the August 24, 2005 Opinion & Order, plaintiff received notice of the trustee's sale along with notice of her right to enjoin the sale. She obviously failed to bring any action to stop the sale before the sale occurred, raising her claims only later in this action. She had actual or constructive knowledge of her alleged defenses to foreclosure prior to the sale. Under Washington law, she has waived her right to bring these claims in this action.

Before turning to defendants' alternative arguments which I discuss briefly below, I address plaintiff's assertions that Fidelity did not have the right to sell the property and that Fidelity did not have authority to act as a Trustee under Washington law. Aside from the fact that these arguments, just like the claims in her Complaint, are subject to the waiver provision in the Deed of Trust Act, her arguments have no merit.

Plaintiff first contends that the Deed of Trust appointed Ticor as trustee, not Fidelity, and thus, Fidelity had no authority to sell the property. Exh. 1 to Compl. at pp. 1, 2, (showing Ticor Title Insurance as Trustee). However, the record shows that an Appointment of Successor Trustee was executed on June 20, 2003,

11 - OPINION & ORDER

because Ticor resigned as trustee and Fidelity National Title Insurance of Washington was appointed as successor trustee under the trust deed. Exh. 1 to Oct. 17, 2005 Affid. of Gaby Ospino. The Appointment of Successor Trustee was recorded in Clark County on July 7, 2003. Id.

Next, plaintiff contends that Fidelity lacked authority to act as a trustee in the State of Washington. Washington law provides that the trustee of a deed of trust may be any "title insurance company authorized to insure title to real property under the laws of this state[.]" RCW 61.24.010(1)(b).

According to evidence submitted by defendants, the website maintained by the State of Washington Insurance Commissioner lists Fidelity National Title Insurance as an authorized title insurance company in the State of Washington. Oct. 17, 2005 Jacobson Declr. at ¶ 3; Exh. 1 to Oct. 17, 2005 Jacobson Declr. Defendants also provide evidence that Fidelity's main branch in Washington is located at 3500 188th Street, SW, Suite 300, Lynnwood, Washington 98037-4760. Exh. 2 to Jacobson Oct. 17, 2005 Declr. Defendants suggest that the reference in the Appointment of Successor Trustee to "Fidelity National Title Insurance of Washington" was simply a short-handed reference to Fidelity National Title Insurance Company located in Lynnwood.

Additionally, at oral argument, defendants tendered an additional exhibit from the State of Washington Insurance Commissioner which shows that Fidelity National Title Company of Washington, located at the Lynnwood, Washington address noted above, is an active and authorized title insurance company in Washington. Exh. 2 to Oct. 27, 2005 Jacobson Declr. Plaintiff

12 - OPINION & ORDER

indicated she opposed consideration of the exhibits tendered by defendants during oral argument based on lack of authentication. Plaintiff was given leave to file a written submission on this issue but failed to do so.  I interpret this as a waiver of plaintiff's objection and I consider the exhibit.  Defendants' evidence establishes that contrary to plaintiff's argument, Fidelity National Title Company of Washington is an entity and is an authorized title insurer in the State of Washington. Accordingly, it is an authorized trustee for a deed of trust under RCW 61.24.010(1)(b).

B. Defendants' Alternative Arguments

1. TILA Claims

TILA requires that any claim based on an alleged failure to make material disclosures be brought within one year from the date of the occurrence of the violation.  15 U.S.C. § 1640(e); <u>King v. State of Calif.</u>, 784 F.2d 910, 915 (9th Cir. 1986).  The limitations period runs from the date of consummation of the transaction.  <u>Id.</u>  The record shows that this alleged TILA violation occurred on November 22, 2002, the date the transaction was consummated, and thus, under the limitations period, plaintiff was required to file this TILA claim no later than November 23, 2003.  The Complaint was filed on March 25, 2004.  This TILA claim is time-barred.

The other TILA claim seeks rescission based on the nondisclosure of documents.  The relevant law for a claim of rescission based on an alleged TILA violation provides that "an obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the

property, whichever occurs first[.]" 15 U.S.C. § 1635(f). In this case, the foreclosure sale has terminated plaintiff's right of rescission. Thus, even if plaintiff had not waived her TILA claims by failing to bring them before the foreclosure, both of them are time-barred.

### 2. Oregon Trade Practices Act Claim

In the August 24, 2005 Opinion & Order, I concluded that Washington law applies to this dispute. Aug. 24, 2005 Op. & Ord. at pp. 7-9. Defendants contend that as a result of that conclusion, plaintiff cannot prevail on an Oregon statutory claim. Although plaintiff originally argued that the choice of law discussion and conclusion in the August 24, 2005 Opinion & Order was limited to the issue of the validity of the deed and the foreclosure, plaintiff conceded during oral argument that the Oregon law did not apply because all of the relevant acts occurred in Washington.

### 3. FDCPA Claim

For the reasons explained in <u>Hulse v. Ocwen Federal Bank, FSB</u>, 195 F. Supp. 2d 1188. 1202-04 (D. Or. 2002), I agree with defendants that Town & Country's and Fidelity's actions were taken as part of a foreclosure on a trust deed and not as part of collecting a debt under the FDCPA.

### 4. Breach of Contract Claim

As noted above, the breach of contract claim pleaded in the original Complaint has two components. The first is that Ameriquest breached the Deed of Trust by declaring plaintiff to be in default when any default was, according to plaintiff, excused by Ameriquest's alleged TILA nondisclosure violations. Second,

14 - OPINION & ORDER

plaintiff contends that defendants breached the Deed of Trust by not foreclosing on the property in accordance with applicable Washington law.

As to the first basis, I agree with defendants that a TILA claim which is otherwise waived or barred, cannot support the breach of contract claim. As to the second basis of the claim, I agree with defendants that I already ruled in the August 24, 2005 Opinion & Order that the foreclosure was not invalid.

### 5. Claims for Slander of Title and Removal of Cloud on Title

Plaintiff concedes that if the reformation of the Deed of Trust stands, these claims should be dismissed.

I grant defendants' summary judgment motion because plaintiff received notice of the trustee's sale with the required notice of her right to enjoin the sale, had knowledge of her defenses to the foreclosure, and failed to bring an action to stop the foreclosure, and thus, she has waived her right to bring the claims in this action. Alternatively, defendants are entitled to summary judgment on each of the claims remaining in the Complaint for the individual reasons discussed here.

## II. Plaintiff's Request for Reconsideration

Plaintiff offers no new law or facts in support of her request of the reformation issue. Thus, she fails to raise a valid basis for reconsidering my earlier decision. Transp. Credit Serv. Ass'n v. Systran Fin. Servs. Corp., No. CV-03-1342-MO, 2004 WL 1920799, at *1 (D. Or. Aug. 26, 2004) ("There are three primary grounds justifying granting a motion to reconsider: (1) an intervening change in controlling law, (2) the availability of new evidence,

15 - OPINION & ORDER

and (3) the need to correct clear error or prevent manifest injustice.") (citing Medford Pacific v. Danmor Constr., 2 F. Supp. 2d 1322, 1323 (D. Or. 1998)); see also 766347 Ontario Ltd. v. Zurich Capital Mkts, Inc., 274 F. Supp. 2d 926, 929 (N.D. Ill. 2003) ("Motions to reconsider are not at the disposal of parties who want to rehash old arguments [and] are not appropriate vehicles to advance arguments already rejected by the Court[.]") (internal quotation and bracket omitted).

However, even reconsidering the issue and the arguments plaintiff puts forth in her reconsideration request, I adhere to my prior ruling. Plaintiff initially argues that defendants' reliance on Berg v. Ting, 125 Wash. 2d 544, 886 P.2d 564 (1995), is misplaced. But, defendants' reliance on Berg was primarily for the basic and uncontested proposition of Washington law that an agreement containing an inadequate legal description is void and not subject to reformation unless the deficient legal description is caused by a scrivener's error or mutual mistake in which case the agreement may be reformed before assessing its validity under the statute of frauds. Id. at 554, 886 P.2d at 570. It was not inappropriate for defendants to cite to Berg for that statement of the law. Defendants also discussed Berg in more detail in support of a "part performance" argument. But, since I did not address or rely on that argument in the August 24, 2005 Opinion & Order, there is no basis for plaintiff seeking reconsideration based on defendants' reliance on this aspect of Berg.

Next, plaintiff contends that under Williams v. Fulton, 30 Wash. App. 173, 632 P.2d 920 (1981), the Deed of Trust was not subject to reformation. There, the court stated that although a

16 - OPINION & ORDER

legal description of property may be reformed if a mutual mistake is established, a "mutual mistake occurs only if the intention of the parties was identical at the time of the transaction, and the written agreement did not express that intention." Id. at 176-77, 632 P.2d at 923. "Reformation is not appropriate . . . if the agreement expresses the intent of the parties, but the legal description is merely incomplete." Id.

Plaintiff argues that accepting her version of the facts as true, the summary legal description supposed to be in the Deed of Trust, and Exhibit A to the Deed of Trust containing the full legal description of the property, were blank and absent at the time of signing. Thus, she argues, the Deed of Trust expressed the intent of the parties but had an incomplete legal description. Under Williams, she maintains, the Deed of Trust is not subject to reformation.

I find Williams distinguishable. First, the Williams court recognized that reformation based on mutual mistake was properly applied to the part of the earnest money agreement which mistakenly included a description of property the seller had previously sold to an unrelated party. Id. at 177 n.3, 632 P.2d at 921 n.3. Under defendant's version of the facts where both the summary legal description and the full legal description were contained in and attached to the Deed of Trust, the legal description was not incomplete, but mistakenly recited the wrong log number, and reformation based on mutual mistake is appropriate under Williams.

Second, even under plaintiff's version of the facts, a completely absent legal description, as she alleges here, is distinct from an incomplete legal description as was at issue in

17 - OPINION & ORDER

<u>Williams</u>.  Thus, the facts as set forth in detail in the August 24, 2005 Opinion & Order demonstrate that the parties in the instant case had the identical intent at the time of signing, but the written agreement, by allegedly omitting any reference to a summary or a complete legal description, did not express the parties' intent.  Thus, under the law as stated in <u>Williams</u>, reformation by mutual mistake is appropriate.

This is supported by the <u>Key Design</u> case cited in the August 24, 2005 Opinion & Order where the land sale document at issue completely omitted the legal description of the property and the court undertook to analyze whether the agreement was subject to reformation based on mutual mistake.  <u>Key Design, Inc. v. Moser</u>, 138 Wash. 2d 875, 883-84, 983 P.2d 653, 659, <u>amended</u>, 993 P.2d 90 0 (1999).  The court found that the sellers of the property did not intend to include a legal description of the property in the sale agreement because they did not intend that agreement to be binding, but instead viewed it as a step in the negotiation process.  <u>Id.</u> at 889, 983 P.2d at 661.  With that testimony, the court concluded that it could not reform the agreement based on mutual mistake because the evidence did not demonstrate that the parties' intentions were identical at the time of the transaction.  <u>Id.</u>

In the August 24, 2005 Opinion & Order, I noted that while the <u>Key Design</u> court ultimately concluded, based on the facts before it, that there was no mutual mistake, the case still stood for the proposition that a land sale document which completely omits a legal description may be reformed based on mutual mistake in the presence of evidence of identical intent.  Upon reconsideration, I still conclude that this is a sound reading of <u>Key Design</u>.

18 - OPINION & ORDER

Finally, plaintiff relies on <u>Sea-Van Investments Associates v.</u> <u>Hamilton</u>, 71 Wash. App. 537, 861 P.2d 485 (1993), <u>rev'd</u>, 125 Wash. 2d 120, 881 P.2d 1035 (1994). In that case, the plaintiff sought specific performance of an alleged land sale contract based on an exchange of letters between the parties. The trial court granted the defendants' motion to dismiss, determining that the letters did not constitute an enforceable contract. 71 Wash. App. at 540, 861 P.2d at 488.

The full legal description of the property was not contained in the letters. Instead, the offering letter referred to "Section 27, southeast of Mt. Vernon." Indicating that the partial description would not satisfy the statute of frauds, the Washington Court of Appeals discussed the purchaser's argument that the letters constituting the contract could be reformed to include the full legal description. The court noted the general tenets of Washington law that agreements containing an inadequate legal description of property are void, but contracts can be reformed based on scrivener's error or mutual mistake. <u>Id.</u> at 542, 861 P.2d at 488.

The court cited <u>Williams</u> for the proposition that when an agreement contains an incomplete legal description, but it otherwise expresses the intent of the parties, it is not subject to reformation. <u>Id.</u> at 543, 861 P.2d at 489. The court then held that in the case before it, the legal description appeared to be "merely incomplete" and thus reformation was not appropriate. <u>Id.</u> The court went on to conclude that the statute of frauds was nonetheless satisfied when the sellers, claiming protection from the statute of frauds, admitted the legal description of the

property in court documents. <u>Id.</u> at 544-45, 861 P.2d at 490. The court then concluded that the terms of the contract were sufficient to find that the parties had a meeting of the minds. <u>Id.</u> at 547, 861 P.2d at 491.

The Washington Supreme Court reversed on the meeting of the minds issue. 125 Wash. 2d at 126-27, 881 P.2d at 1038-39. It never discussed the issues of reformation and mutual mistake.

Plaintiff relies on the opinion from the Washington Court of Appeals to support her position that because, under her version of the facts, the Deed of Trust she executed omitted the legal description, it is not subject to reformation based on mutual mistake. But again, as in <u>Williams</u>, that is not the holding from the Court of Appeals case in <u>Sea-Van</u> because in <u>Sea-Van</u>, there was a partial legal description, not a completely omitted one, and thus, the legal description in the putative contract documents could be described as "incomplete," making it not subject to reformation. Here, either there was a legal description in the Deed of Trust at the time of signing which contained a clear error in the lot number (defendants' version of the facts), or the legal description was completely absent (plaintiff's version of the facts). Either way, as explained above in discussing <u>Williams</u>, the Deed of Trust is subject to reformation based on mutual mistake because it had a complete, but erroneous, legal description, or it had no legal description. It did not recite an incomplete legal description.

The last argument plaintiff makes in support of her request for reconsideration is that the August 24, 2005 Opinion & Order erroneously relied on <u>Rogers v. Miller</u>, 13 Wash. 82, 42 P. 525

20 - OPINION & ORDER

(1895). Plaintiff contends that the case is no longer controlling because it predates the existence of Washington's nonjudicial foreclosure statutes. But, there is nothing in Rogers to suggest that the premise for which I cited it, that reformation based on an erroneous or omitted legal description may occur after a foreclosure, is limited to judicial foreclosures.

Having reconsidered the reformation issue decided in the August 24, 2005 Opinion & Order, I adhere to my initial ruling: the Deed of Trust is properly reformed based on mutual mistake and so reformed, it complies with the statute of frauds and appropriately set the foundation for the subsequent foreclosure proceedings.

III. Plaintiff's Motion to Amend

At oral argument on defendants' summary judgment motion, plaintiff orally moved to amend her Complaint to add a breach of fiduciary duty claim. I allowed plaintiff to file a formal motion to amend, which she did. Having considered the motion and defendants' response, I deny it.

In the proposed Amended Complaint, plaintiff's Eighth Claim for Relief is a breach of fiduciary duty claim against Fidelity in which plaintiff contends that Fidelity owed plaintiff "a fiduciary duty to use every requisite degree of diligence in conducting the sale of Plaintiff's property and to treat Plaintiff fairly." Proposed Am. Compl. at ¶ 70. Plaintiff contends that Fidelity breached its duty by conducting a nonjudicial sale of the property knowing that it did not have authority to do so, and knowing that the sale advertisements were not likely to attract bidders to the sale because of the mistaken lot number. Id. at ¶ 71.

21 - OPINION & ORDER

Plaintiff further alleges that Fidelity breached its duty by deeding the property to Deutsche Bank by way of a Trustee's Deed containing false recitals. Id. at ¶ 72. Plaintiff contends that the Trustee's Deed falsely stated that the conveyance was pursuant to a Deed of Trust between plaintiff, Ticor, and Ameriquest when Fidelity knew that the actual Deed of Trust did not empower Fidelity to sell the property. Id. Plaintiff also contends that the Trustee's Deed falsely stated that Fidelity sold plaintiff's property to Deutsche Bank as the highest bidder as provided by statute. Id.

A. Standards

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." The court should apply the rule's "policy of favoring amendments with extreme liberality." DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987) (internal quotation omitted). In determining whether to grant a motion to amend, the court should consider bad faith, undue delay, prejudice to the opposing party, futility of amendment, and prior amendments to the complaint. Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d 351, 355-56 (9th Cir. 1996). Delay, by itself, will not justify denying leave to amend. DCD Programs, 833 F.2d at 186.

B. Discussion

Defendants argue that plaintiff's motion should be denied because the proposed new claim is futile. I agree with defendants. Additionally, the timing of the motion to amend following the close of discovery and with a pending summary judgment motion, weighs heavily against allowing leave. Schlacter-Jones v. General Tel. of

22 - OPINION & ORDER

1    <u>Calif.</u>, 936 F.2d 435, 443 (9th Cir. 1991).

2        As with the other claims at issue in this motion, most of

3    plaintiff's proposed breach of fiduciary duty claim has been waived

4    due to plaintiff's failure to raise the claim as a defense to the

5    foreclosure in an action brought before the foreclosure.  Again,

6    plaintiff had notice of the trustee's sale, had notice of her right

7    to initiate an action to stop the foreclosure, knew of the basis of

8    the breach of fiduciary duty claim before the sale, and failed to

9    bring a pre-foreclosure action.  As discussed above, this results

10   in a waiver of her right to bring the claim now.

11       The only portion of the breach of fiduciary duty claim that

12   could not have been brought as a defense to the foreclosure prior

13   to the foreclosure is the allegation that Fidelity allegedly

14   breached its fiduciary duty by making false recitals in the deed to

15   Deutsche Bank.  Because the deed to Deutsche Bank was executed

16   after the foreclosure sale, plaintiff could not have raised an

17   alleged irregularity in the post-sale deed in a pre-sale action.

18       The first recital challenged by plaintiff is one that Fidelity

19   had authority to convey the property when it did not.    The

20   discussion above regarding the Appointment of Successor Trustee

21   shows that Fidelity did indeed have authority to conduct the sale

22   and convey the property.  Exh. 13 to June 20, 2005 Cotter Affid.

23   Thus, any alleged breach of fiduciary duty based on an alleged

24   false representation about Fidelity's authority, or lack thereof,

25   to convey the property at the foreclosure sale, is not supported by

26   the evidence and it would be futile to amend the Complaint to add

27   such a claim.

28       The second recital challenged by plaintiff concerns the

23 - OPINION & ORDER

representation that Fidelity conveyed the property to Deutsche Bank in consideration for payment of $183,506.02. Id. Plaintiff contends that the recital is false because Deutsche Bank was not a bidder at the sale and did not pay for the property in the form of cash, certified check, money order, or funds received by verified electronic transfer, or any combination of these methods, as required by RCW 61.24.070(2).

Washington law provides that the beneficiary under a Deed of Trust may bid at the trustee's sale. RCW 61.24.070(1). The law further provides that the "trustee shall, at the request of the beneficiary, credit toward the beneficiary's bid all or any part of the monetary obligations secured by the deed of trust." RCW 61.24.070(2). "If the beneficiary is the purchaser, any amount bid by the beneficiary in excess of the amount so credited shall be paid to the trustee" in one of, or in a combination of, various specified forms. Id. If the purchaser is not the beneficiary, the entire bid is to be paid to the trustee in one of, or in a combination of, various specified forms. Id.

On January 9, 2004, Ameriquest, the designated beneficiary under the original Deed of Trust, submitted its bidding instructions for the sale. Nicolia Godfrey Affid. at ¶ 3; Exh. 1 to Nicolia Godfrey Affid. The instructions allow for a bid of up to $183,506.02, the outstanding amount of the loan. Id. The instructions further provide that if the "property reverts, please take title in the name of our investor as follows: Deutsche Bank National Trust Company, As Trustee Of Ameriquest Mortgage Securities, Inc. Series 2002-D, Asset-Backed Pass-Through Certificates, Under the Pooling & Servicing Agreement Dated as of

24 - OPINION & ORDER

December 1, 2002, Without Recourse." Id. At foreclosure, as a result of this bid, the property reverted back to the beneficiary Deutsche Bank for the $183,506.02 owed on the outstanding loan. Nov. 9, 2005 Supp'l Gaby Ospino Affid. at ¶ 3; Exh. 1 to Nov. 9, 2005 Supp'l Gary Ospino Affid. The amount paid for the property at foreclosure was not in excess of the amount credited. Thus, there was no requirement of payment to the trustee under RCW 61.24.070(2). Plaintiff cannot sustain a breach of fiduciary duty claim based on an alleged false recital in the trustee's deed to Deutsche Bank regarding "payment" by Deutsche Bank or regarding a violation of RCW 61.24.070(2). Therefore, allowing plaintiff to amend her Complaint to add such a claim would be futile.

CONCLUSION

Defendants' motion for summary judgment (#77) is granted. Plaintiff's motion to amend (#98) is denied. Plaintiff's request for reconsideration is denied.

IT IS SO ORDERED.

Dated this __22nd__ day of __December__,
2005.


/s/ Dennis J. Hubel

_____    _____
                                  Dennis James Hubel
                                  United States Magistrate Judge

25 - OPINION & ORDER